Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5407 | **DATE** | 10/31/2000 |
| **CASE TITLE** | Trujillo et al vs. Bridgestone-Firestone, Inc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** This Court denies Plaintiffs' motion (Docs 8-1 & 8-2) to remand.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | NOV 01 2000 date docketed | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | FD-7 FILED FOR DOCKETING | docketing deputy initials |
| | Copy to judge/magistrate judge. | 00 OCT 31 PM 3: 35 | |
| SCT | courtroom deputy's initials | | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

RODOLFO TRUJILLO, ROBERTA GREENBERG, and CAROL D. KUSTURISS, individually and on behalf of all similar situated,

    Plaintiffs,

vs.

BRIDGESTONE-FIRESTONE, INC. and FORD MOTOR COMPANY,

    Defendants.

00 C 5407

DOCKETED NOV 0 1 2000

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

### INTRODUCTION

This matter comes before the court upon Plaintiff Trujillo's motion to remand for lack of subject matter jurisdiction. For the following reasons, we deny Plaintiff's motion.

### BACKGROUND

This action arises from events surrounding the alleged defect in certain types of tires manufactured by Bridgestone/Firestone Inc. ("Firestone") and issued as standard equipment on certain models of vehicles manufactured by Ford Motor Company

("Ford"). The defect allegedly causes the treads of the tires to peel off their casing. On August 9, 2000, following a rash of negative publicity surrounding the tires, Firestone announced a recall of certain sizes of Firestone ATX, ATX II and Wilderness AT tires.

On August 16, 2000, Plaintiffs filed this class action against Firestone and Ford in the Circuit Court of Cook County, Illinois, Law Division. The putative class was comprised of "all persons or entities who own or lease a vehicle with Firestone ATX, ATX II and Wilderness AT tires, or who have replaced such tires." The class sued under theories of breach of express and implied warranties of merchantability and consumer fraud. As remedies, the class sought compensation for damages incurred in connection with the replacement of the aforementioned tires, as well as an injunction ordering Firestone to replace immediately the defective tires using all available service facilities and brands of tires. The class also demanded statutory damages, appropriate punitive and treble damages, and attorneys' fees and costs.

On September 1, 2000, Ford removed the case to federal court. The Trujillo plaintiffs seek remand of the case to the Cook County Circuit Court for lack of subject matter jurisdiction.

## DISCUSSION

A defendant may remove an action from state court to federal court if the federal court would have had jurisdiction over the lawsuit as originally filed by the plaintiff.

See 28 U.S.C. § 1441. If the federal court subsequently determines that it lacks subject matter jurisdiction, however, the action must be remanded to state court. See 28 U.S.C. § 1447(c). In reviewing removal motions, the court should presume that the plaintiff chose a valid and proper forum and resolve doubts about jurisdiction in favor of remand. See Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993). The party seeking removal carries the burden of establishing federal jurisdiction. See Shaw v. Dow Brands, Inc., 994 F.2d 364, 366 (7th Cir. 1993).

When a lawsuit satisfies the requirements of diversity jurisdiction, it can properly be removed to federal court. See 28 U.S.C. § 1441. In order to satisfy the diversity jurisdiction requirements, the parties must have complete diversity and meet the requisite amount in controversy. See 28 U.S.C. § 1332. In the instant case, the parties do not dispute that complete diversity exists. However, the parties sharply contest whether Plaintiffs can meet the amount in controversy requirement.

In order to resolve the amount in controversy dispute, we look first to the Complaint itself to ascertain what Plaintiffs seek. Plaintiffs assert breaches of express and implied warranties of merchantability along with consumer fraud. Of particular importance is the injunctive remedy sought by Plaintiffs. Plaintiffs ask the Court "to enjoin Defendants from waiting a year to replace their admittedly defective product." They demand that Firestone "immediately replace the defective tires, using all available

service facilities and brands of tires." Essentially, Plaintiffs demand a reconfiguration of the current recall efforts in order to expedite the tire replacement process.

Next, we must determine whether Plaintiffs' request for injunctive relief amounts to the "enforce[ment] of a single title or right in which Plaintiffs have a common and undivided interest." See Snyder v. Harris, 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). If it does, then we can use the cost to Ford of administering injunctive relief to determine the amount in controversy. See In re Brand Name Prescription Drugs, 123 F.3d 599, 609-10 (7th Cir. 1997) (holding that courts may consider the cost of enforcing the relief a plaintiff seeks in determining whether the value of a suit exceeds the amount in controversy requirement); Jacobson v. Ford Motor Co., No. 98 C 742, 1999 WL 966432, at *3 (N.D. Ill. Sept. 30, 1999) (holding that the desired injunctive relief constituted a common and undivided interest of the class and determining the value of the injunction from defendants' perspective).

Unfortunately, the Supreme Court did not in Snyder define "common and undivided interest." In the case law, the distinction between "common and undivided interests" and several and distinct claims is far from clear. See 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3704 (3d ed. 1998). In Jacobson, our sister court found a common and undivided interest where a class sought a judicial declaration that Ford's practice of providing customers

-4-

with goodwill service on case-by-case basis was illegal. See id. at *3. The Court reasoned that the desired relief related to Ford's "general practice," rather than to Ford's specific refusals to provide goodwill services to some customers but not others. See id. The Court determined the value of the injunctive relief by measuring the cost to Ford of enforcement. See id. Because Ford would have to identify and notify owners of the types of vehicles at issue, the costs could run into millions of dollars. See id. Accordingly, the Court concluded that the cost would well exceed the $75,000 amount in controversy requirement. See id.

In Lhotka v. Ford Motor Co., by contrast, another sister court declined to find a common and undivided interest. See 98 F. Supp. 2d 984, 988 (N.D. Ill. 2000). A class of plaintiffs alleged that Ford breached its contracts with Plaintiffs and violated provisions of Illinois and Michigan consumer protection laws. See id. at 985. The class members had bought or leased 1994-95 Ford vehicles with 3.8 liter engines and suffered damage as a result of the engine's premature head gasket failure. See id. Many of the class members' warranties had already expired. See id. In concluding that no common and undivided interest was at stake, the Court emphasized that Plaintiffs were neither proposing an across-the-board warranty extension nor a "far-reaching and expensive service program." Id. Instead, Plaintiffs merely requested a judicial declaration that Ford's written warranties were unenforceable with respect to the head gaskets. See id.

at 986. The Court concluded that each plaintiff had his or her contract with Ford and could assert individual rights without affecting the rights of any other putative class member. See id. at 987. In effect, the Court treated the cause of action as implicating warranty instruments negotiated on a separate and individual basis, rather than proposing broad reactive measures. See id.

We find the reasoning in Jacobson to be more applicable than Lhotka to the instant situation. In their effort to reform the current recall measures, the Trujillo Plaintiffs seek "broad relief affecting the class as an undivided whole." Id. They want to impact the "general practices" currently employed by Ford and Firestone to respond to the alleged safety problems of the tires at issue. Jacobsen, 1999 WL at *3. Indeed, these plaintiffs want to impose just the sort of "far-reaching and expensive service program" to replace tires that was lacking in Lhotka. Lhotka, 98 F. Supp. at 986.

Moreover, only the Trujillo class as a whole is entitled to the relief requested. See Poindexter, 1991 WL at *2 (citing Griffith, 903 F.2d at 498). Regardless of whether a single plaintiff or numerous plaintiffs brought this action, the cost to Ford of revamping the recall would be the same. See Cahnmann v. Spring Corp., 961 F. Supp. 1229, 1232 (N.D. Ill. 1997). This is not a case where the cost of the injunctive relief to Ford is simply the aggregate of all of the claims of individual class members. See e.g. id. (finding that the cost to defendant Sprint of reimbursing customers for change in

promised rate is simply the aggregate of each individual's claims). Rather, the cost of the injunctive relief to Ford correlates to the parameters of the recall which would affect all class members regardless of the class size.

Furthermore, we are convinced that the cost of redesigning the recall would exceed the $75,000 amount in controversy requirement. Seventh Circuit case law permits us to measure the value of the proposed injunctive relief from the standpoint of the defendant if the injunction would require some alteration in the defendant's way of doing business that would cost the defendant at least the statutory amount. See Brand Name, 123 F.3d at 609. Although the parties have not provided any papers regarding projected costs, logic dictates that substantial costs would be involved in expediting the recall according to Plaintiffs' demands. The current recall is scheduled to span an 18-month period. Plaintiffs want the replacements to occur immediately. Should such an injunction be issued, the amount of money needed to transform an 18-month process into a more immediate one would undoubtedly exceed $75,000. As a threshold matter, the cost of notifying each tire recipient of the adjusted recall provisions would be substantial. In addition, actually procuring the tires (probably from abroad, according to Ford's papers) and transporting them to the appropriate locations would be prodigious.

## CONCLUSION

For the foregoing reasons, this Court denies Plaintiffs' motion to remand.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: __October 31, 2000__